**LOS ANGELES COUNTY ASSOCIATION OF ENVIRONMENTAL HEALTH SPECIALISTS, Plaintiff,**

v.

**Kurt LEWIN, et al., Defendants.**

**No. CV 02–2190 AHM (JTLx).**

United States District Court,
C.D. California.

May 31, 2002.

**1072**

Richard I. Fine, Richard I. Fine & Associates, Beverly Hills, CA, for Plaintiff.

Kevin M. McCormick, Brenda L. McCormick, Benton Orr Duvall & Buckingham, Ventura, CA, for Lewin, Superior Court of Los Angeles and Court of Appeal of State of California.

Michael M. Bergfeld, Tomas A. Guterres, John J. Collins, Collins Collins Muir & Traver, South Pasadena, CA, for County of Los Angeles.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

MATZ, District Judge.

### I.

### INTRODUCTION

This action is before the Court on the motion of Defendants Kurt Lewin, the Superior Court of the County of Los Angeles ("Superior Court") and the Court of Appeal of the State of California ("Court of Appeal") and the separate motion of Defendant County of Los Angeles ("County") to dismiss the complaint of Plaintiff Los Angeles County Association of Environmental Health Specialists ("Association") under Rule 12(b) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim. This motion having been fully briefed, the Court finds that it may render a decision without a hearing pursuant to Fed. R.Civ.P. 78 and L.R. 7–15. Good cause appearing therefor, the Court GRANTS both motions to dismiss.

### II.

### FACTUAL ALLEGATIONS

In its complaint filed March 15, 2002, the Association alleges the following facts, which the Court takes as true for purposes of this motion to dismiss. *Wyler Summit Partnership v. Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998).

The Association is a "recognized employee organization" that represents employees who are environmental health inspectors of the County. Complaint ¶ 6. Association members "are responsible for conducting health permit and license inspections for restaurants and other facilities requiring such licenses, and inspecting facilities [that] can pose a health hazard to the community." *Id.*

In August 1994, the Association and its then-president, Norman Amjadi, sued the County and others in Los Angeles Superior Court for violating various California state laws that require the County to keep in a "separate fund," commonly known as a "Special Fund," revenues obtained for special purposes such as "health license and permit fees" to be used for restaurant inspections. Complaint ¶ 11. The County kept such monies in its "General Fund," and commingled it with other County monies. *Id.*

Judge Lewin presided over the case. Complaint ¶ 7. After a two-day trial, Judge Lewin held that the County had placed in its General Fund more than $10 million in funds that should have been kept in the Special Fund. Complaint ¶¶ 11–12. Judge

Lewin ordered that such money could be used only for the County's health inspection program, that until such money was used the County could not raise the amount it charged for health permits and licenses and that the County must establish a separate fund for the money (and all fees collected in the future for health permits and licenses). Complaint ¶ 12.

The Association sought attorney's fees and costs in the amount of approximately $1.5 million. Def.'s Ex. C at 40 (Court of Appeal decision, of which this Court takes judicial notice). On October 26, 1999, Judge Lewin denied the Association's request for fees and costs under Cal.Code Civ. P. § 1021.5 on the grounds that (1) the Association was motivated primarily by self-interest in bringing the lawsuit because it used the suit as a bargaining chip in a labor dispute with the County; (2) the Association failed to show the "necessity" of the lawsuit; (3) allowing recovery of fees in the case would encourage unions and labor associations to sue their governmental employers for their own purposes unrelated to the labor dispute to coerce labor concessions; and (4) the lawsuit did not confer a significant benefit on the public or a large class of persons. Def.'s Mot. Ex. A (Judge Lewin's Order Denying Fees, of which this Court takes judicial notice).[1]

In December 1999, the Association and Amjadi sought to disqualify Judge Lewin under Cal.Code. Civ. P. § 170.3 on the ground that he was biased against (1) labor unions/associations and government employees, (2) government employees who bring suit against their employers and (3) government unions who bring suit against the government. Complaint ¶ 14. Judge Lewin struck the challenge as meritless. *Id.*

On February 16, 2001, the Court of Appeal, Second Appellate District, affirmed Judge Lewin's denial of attorney's fees. Complaint ¶ 15. In an unpublished opinion by Justice Croskey, concurred in by Justices Kitching and Aldrich, the Court of Appeal "[found] no fault with the trial court's conclusion that this suit was actually motivated by plaintiffs' own personal interests and that the taxpayers should therefore not pick up the tab for plaintiffs' litigation costs." Def.'s Ex. C at 47. The Court of Appeal also held that the record did not establish that Judge Lewin was biased against the plaintiffs. *Id.* at 53.

By this lawsuit, the Association seeks "a Writ of Mandate, Writ of Prohibition or Other Appropriate Relief ordering the Superior Court and the Court of Appeal to strike, void and prohibit the enforcement of their decisions denying attorneys fees to [the Association] .... The suit seeks damages from Lewin, the County, and the Superior Court in the amount of $1.5 million or such amount to be proven at trial." Complaint ¶ 3.

The basis for the Association's attack on the state court decisions is as follows. In 1997, the California Legislature passed the Trial Court Funding Act of 1997 ("Act"). Complaint ¶ 17. Under the Act, starting in January 1998, the salaries of state court judges were to be paid by the State, not the County. *Id.* After the Act went into effect, the County continued to pay Superior Court judges, including Judge Lewin, so-called "local judicial benefits." *Id.* From January 1998 onward, therefore, Judge Lewin received payments from the County as well as his salary from the State. Complaint ¶ 16. By November 2001, the County had paid Judge Lewin a total of $96,050.10 in benefits. *Id.*

---

1. The Association's complaint mischaracterizes Judge Lewin's Order when it states: "[T]he trial court did not award attorneys fees and costs stating as its reason that [the Association] was an employee union." Complaint ¶ 13.

The Association contends that the County's payment of benefits to Judge Lewin violates California law. The Association further contends that Judge Lewin's failure to disclose to the Association his acceptance of the County's money violates numerous canons of the California Code of Judicial Ethics and certain state statutes because the County was a defendant in the state court proceeding. Complaint ¶¶ 21–24. The Association also contends that the Superior Court, the Court of Appeal and the County all had knowledge that Judge Lewin was accepting payment from the County, but failed to disclose this fact to the Association. Complaint ¶¶ 19–20, 26. The Association discovered for the first time that Judge Lewin had accepted payments from the County in November 2001, after it made a public information request to the County of Los Angeles. Complaint ¶ 2; Complaint Ex. 1 (response to the Association's public information request).

On the basis of these allegations, the Association brings causes of action under 42 U.S.C. § 1983 for violation of (1) the First and Fourteenth Amendments, (2) due process and (3) equal protection. Specifically, the Association claims that in concealing the fact that Judge Lewin accepted payments from the County, all Defendants "targeted [the Association], denied it due process, equal protection, and deprived it of access to the courts and property interests.... The only remedies are the issuance of a writ of mandate striking and voiding the decision of the Superior Court denying attorneys fees and costs to [the Association] ... and striking and voiding the decision of the Court of Appeal affirming such [decision]." Complaint ¶ 33. Moreover, the Association seeks damages in the amount of $1.5 million, which is the same as the amount of requested attorney's fees and costs in the state court proceeding. Complaint ¶ 36.

Defendants Lewin, the Superior Court and the Court of Appeal now move to dismiss the complaint on the grounds that: (1) Plaintiff's claims are barred by the Eleventh Amendment; (2) Plaintiff's claims against them are barred by judicial immunity; (3) Cal.Code Civ. P. § 1021.5 does not confer upon a successful litigant an award of attorney's fees as a matter of right, and therefore does not create a constitutionally protected property interest; (4) Plaintiff's attempt to relitigate the attorney's fees issue is barred by res judicata and collateral estoppel; (5) Plaintiff's case fails on the merits because (a) the County's payment of benefits to Superior Court judges does not violate any state statute or code of judicial ethics and (b) the County's payment of benefits to Superior Court Judges is automatically disclosed and a matter of public record. The County, in its separate motion to dismiss, advances the sole argument that Plaintiff's case is barred under the *Rooker–Feldman* doctrine.

The Court GRANTS both motions to dismiss because: (1) the Court does not have subject matter jurisdiction over the action under the *Rooker–Feldman* doctrine; (2) Judge Lewin enjoys absolute judicial immunity; and (3) the Superior Court and Court of Appeals enjoy Eleventh Amendment immunity.

### III.

### DISCUSSION

#### A. Standards Governing Rule 12(b)(6) Motions

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit Partnership v.*

*Turner Broadcasting System, Inc.,* 135 F.3d 658, 661 (9th Cir.1998). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners,* 777 F.2d 462, 464 (9th Cir.1985). On the other hand, dismissal is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir.1989) (quoting *Conley v. Gibson*). Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996).

## B. *Rooker–Feldman* Doctrine

The County argues that Plaintiff's claims are barred under the *Rooker–Feldman* doctrine. Under this doctrine, "[t]he United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. McNair,* 805 F.2d 888, 890 (9th Cir.1986). Rather, under federal statute, "the proper court in which to obtain such review is the United States Supreme Court." *Id.* (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983)).

"This doctrine applies even when the challenge to the state court decision involves federal constitutional issues." *Id.* (citing *Feldman,* 460 U.S. at 484–86, 103 S.Ct. 1303). A federal district court, however, may assert jurisdiction over a "general" constitutional challenge to a state rule "that does not require review of a final state court decision in a particular case." *Id.* (citing *Feldman,* 460 U.S. at 482–86 n. 16, 103 S.Ct. 1303).

■■■ The distinction between a challenge to a particular state court decision and a general challenge to a state rule "may be subtle, and difficult to make." *Id.* (citing *Feldman,* 460 U.S. at 485, 103 S.Ct. 1303). The Supreme Court has explained that a district court may not consider constitutional claims if they are "inextricably intertwined" with the state court's decision in a particular case. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. Moreover, a party may forfeit his right to obtain review of his federal claims if it could have, but failed to, raise the claims in state court. *Id.* The purpose of this rule is to "giv[e] the state court the first opportunity to consider a state statute or rule in light of federal constitutional arguments." *Id.* "In other words, *Rooker–Feldman* will bar not only federal issues actually raised in state courts, but also those inextricably intertwined issues that could have been raised there." Barry Friedman & James E. Gaylord, *Rooker–Feldman, From the Ground Up,* 74 Notre Dame L. Rev. 1129, 1135 (1999).

■■ In this case, the Court concludes that the Association's federal constitutional claims are "inextricably intertwined" with the state court's decision to deny attorney's fees, and are therefore unreviewable. The Association is not bringing a general constitutional challenge to the County's practice of providing benefits to Superior Court judges, or the practice by Superior Court judges of not disclosing that they receive such benefits from the County. Under these circumstances, this Court is without jurisdiction to hear this case.

That this Court is without jurisdiction can be seen most clearly in light of the following facts. The Association's complaint repeatedly asks this Court to strike

the Superior Court's order denying attorney's fees and the Court of Appeal's decision affirming that order. For example, the relief sought by the complaint is a writ of mandate or a writ of prohibition "ordering the Superior Court and the Court of Appeal to strike, void and prohibit the enforcement of their decisions denying attorney's fees to [the Association], Amjadi and their counsel in the case of *Amjadi and [the Association] v. Los Angeles County Board of Supervisors* .... The suit seeks damages from Lewin, the County and the Superior Court in the amount of $1.5 million." Complaint ¶ 3. The "damages" sought are the same amount as the attorney's fees and costs requested by the Association in the underlying state court action. Essentially, the Association is asking this Court to reverse the state court's denial of attorney's fees, and, even further, to award attorney's fees in the form of "damages" for § 1983 violation. If this were a general constitutional challenge to the County's practice of paying Superior Court judges' benefits, the relief sought would be much different: an injunction to prohibit the County from paying benefits to Superior Court judges, or compelling Superior Court judges to disclose such benefits in cases where the County is a defendant.

The "intertwining" of the constitutional claims and the state court decision can be seen most clearly in paragraph 26 of the complaint, which states: "Lewin, under color of state law and action, targeted [the Association], denied it due process, equal protection, and deprived it of access to the courts and property interests by taking monies from the County and not disclosing such to [the Association] in the case of *Amjadi and [the Association] v. Los Angeles County Board of Supervisors* ... in violation of the Code of Judicial Ethics *and denying it attorney's fees in the case*.... The Court of Appeal knowing that the County was giving monies to Lew-

in and knowing that he was concealing such acted in concert with Lewin and did not disclose such to the [the Association] in violation of the Code of Judicial Ethics *and affirmed Lewin's decision to deny attorneys fees to [the Association], Amjadi and their counsel.*" Complaint ¶ 26 (emphasis added). These allegations make clear that the Association is asking this Court not to review generally the constitutionality of a state rule or practice, but to reach out and invalidate a particular state court decision.

Moreover, the complaint describes in detail the facts of the underlying state court decision. It (inaccurately) describes the basis of the Superior Court's denial of attorney's fees as well as the Court of Appeal's decision affirming that denial. Complaint ¶¶ 13–15. These allegations would not be relevant unless the Association were asking this Court to review a particular state court decision denying attorney's fees.

The federal constitutional claims asserted in this case are based on information that the Association allegedly did not discover until November 2001, after the Court of Appeal affirmed Judge Lewin's decision, and after the California Supreme Court denied review of the appeal. However, according to the complaint itself, the payments made by the County to Superior Court judges are disclosed in publicly available documents and are described as "local judicial benefits" paid from the County's general fund. Complaint ¶ 17, Ex. 2. In fact, as alleged in the complaint, the documents that the Association attaches to the complaint were obtained as a result of a request under the California Public Records Request Act. Complaint ¶ 2(1); Ex. 1. The Association has proffered no reason why it could not have discovered this information prior to November 2001, and during the pendency of

its action against the County. In short, the Association's current claims are inextricably intertwined with claims it could have brought before the state court, and are therefore barred under *Rooker–Feldman.*

It is also clear that the Association is not bringing a general constitutional challenge to the County's practice of paying benefits to Superior Court judges *because the Association never alleges or argues that such payments violate the United States Constitution or any federal statute.* Instead, the Association argues only that this practice violates California state law and code of judicial ethics. The only aspect of the Association's lawsuit that is constitutional in nature is its allegation that, *in this particular case,* Judge Lewin's conduct in presiding over the case, and the remaining Defendants' failure to disclose that Judge Lewin accepted payments from the County, violated the constitution by depriving the Association of a property right (i.e., its attorneys fees in this particular case), due process, equal protection and access to the courts. These allegations are clearly "inextricably intertwined" with Judge Lewin's decision to deny attorney's fees to the Association. If these allegations are taken away, no federal question remains, and this case, which is premised on federal question jurisdiction under 28 U.S.C. § 1331, cannot be heard in federal court.

For these reasons, the Court concludes that it does not have subject matter jurisdiction over this case. Accordingly, both motions to dismiss are hereby GRANTED.

## C. Judicial Immunity

Judge Lewin argues that the Association's suit against him is barred by absolute judicial immunity. The Court concludes that this is an alternative and additional ground upon which to dismiss the complaint against Judge Lewin.

■ "It is well settled that judges are generally immune from suit for money damages." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1133 (9th Cir.2001). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) (citation omitted). Judicial immunity is not overcome by allegations that a judge acted corruptly. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The Supreme Court has identified two exceptions to absolute judicial immunity. "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286.

■ Neither exception applies here. Judge Lewin clearly was performing a judicial function when he denied the Association's request for attorney's fees. *See Duvall,* 260 F.3d at 1133 (particular act is judicial in nature if it is a "normal judicial function"). Therefore, the first exception does not apply.

Nor has the Association established that Judge Lewin was acting in the "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12, 112 S.Ct. 286. The relevant inquiry is whether Judge Lewin had jurisdiction over the subject matter before him. *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ." *Id.*

Assuming the allegations in the complaint are true, the Association has not

established that Judge Lewin did not have jurisdiction over the subject matter in the underlying case. Clearly, it was within his authority to adjudicate the dispute between the Association and the County, as well as the Association's request for attorney's fees. Even if Judge Lewin violated the Association's constitutional rights by failing to disclose that he received payments from the County, he did not act in the complete absence of jurisdiction. Therefore, Judge Lewin is entitled to absolute immunity from all of the Association's claims. This is an alternative basis upon which to dismiss the complaint against him.

### D. Eleventh Amendment

Judge Lewin, the Superior Court and the Court of Appeal argue that the Association's suit against them is barred by the Eleventh Amendment. "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir.1995) (concluding that a municipal court in California is an "arm of the state") (citation omitted). In *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir.1987), the Ninth Circuit held that a Superior Court of California was an arm of the state, even though the County at that time "pa[id] most of the Superior Court's bills." The court reasoned that "[t]he official name of the court is the Superior Court of the State of California; its geographical location within any particular county cannot change the fact that the court derives its power from the State and is ultimately regulated by the State. Judges are appointed by California's governor, and their salaries are established and paid by the State." *Id.* Because the Ninth Circuit concluded that "a suit against the Superior Court is a suit against the State," it held that such a suit was barred by the Eleventh Amendment. *Id.*

On the basis of *Zolin*, the Court holds that both the Superior Court and the Court of Appeals enjoy Eleventh Amendment immunity from the Association's suit. This is an alternative and additional ground upon which to dismiss the complaint against these Defendants.

Because the claims against Judge Lewin are clearly barred under the doctrine of judicial immunity, the Court does not reach whether Judge Lewin, a state employee, also enjoys Eleventh Amendment immunity.

### IV.

### CONCLUSION

The Court does not have subject matter jurisdiction over this suit under the *Rooker-Feldman* doctrine. On this basis alone, the Court GRANTS both motions to dismiss.[2] Alternatively, the Court GRANTS Judge Lewin's motion to dismiss[3] because he enjoys judicial immunity from suit. Also in the alternative, the Court GRANTS the motion to dismiss of the Superior Court and Court of Appeal[4] because they enjoy Eleventh Amendment immunity. Given the foregoing bases for granting Defendants' motions, the Court declines to grant leave to amend. This Order is not intended or authorized for publication.

IT IS SO ORDERED.

---

2. Docket numbers 5 & 8.

3. Docket number 5.

4. Docket number 5.