Filed 10/30/14  Ettlin v. Veasey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DENNIS ETTLIN et al., | |
| Plaintiffs and Appellants, | E058417 |
| v. | (Super.Ct. No. YC064994) |
| GLENDA VEASEY et al., | |
| Defendants and Respondents. | |
| ANTHONY LOCATELLI, | |
| Plaintiff and Appellant, | E058420 |
| v. | (Super.Ct. No. BC472585) |
| THOMAS TRENT LEWIS, | **OPINION** |
| Defendant and Respondent. | |
| [And eight other cases.*] | |

APPEAL from the Superior Court of Los Angeles County.  Robert H. O'Brien and Frederick C. Shaller, Judges.  Affirmed.

Dennis Ettlin, Daniel Cooper, and Anthony Locatelli, Plaintiffs and Appellants in pro. per.

* Ettlin v. Slawson (No. YC065018); Ettlin v. Kriegler (No. YC065019); Ettlin v. Taylor (No. YC065021); Ettlin v. Kuhl (No. YC065164); Cooper v. Weinbach (No. SC113064); Cooper v. Todd (No. SC113135); Cooper v. Ashmann-Gerst (No. SC113136); Cooper v. Levanas (No. SC113137)

1

Benton, Orr, Duval & Buckingham and Kevin M. McCormick for Defendants and Respondents.

This appeal comprises ten cases that have been consolidated, either at the trial or at the appellate level. In each case, one of the three plaintiffs is suing a judge, commissioner, or appellate justice. Basically, plaintiffs claim that, because defendants have received supplemental employment benefits from their local county, above and beyond their salary from the state, defendants are biased in favor of the county. Plaintiffs also claim that, in divorce cases, the county has an interest in awarding custody to one parent and in requiring the other parent to pay a relatively high amount of child support. Thus, according to plaintiffs, defendants should have been disqualified from presiding over plaintiffs' divorces (and possibly other matters involving plaintiffs; the record is not entirely clear on this point). Plaintiffs seek money damages.

The trial court sustained demurrers in all ten cases. Plaintiffs appeal. We will hold that a jurist who has received local supplemental benefits from a county is not therefore disqualified from cases involving that county. Separately and alternatively, we will also hold that plaintiffs' claims are barred by absolute judicial immunity.

I

HISTORICAL BACKGROUND

Because plaintiffs' complaints do not go into detail about the nature of local supplemental benefits, we take judicial notice of certain background facts. (See Evid. Code, § 452, subd. (h) [judicial notice of facts not reasonably subject to dispute and

2

capable of immediate and accurate determination by resort to reasonably indisputable sources].)

In California, until 1994, superior court judges' salaries were funded partly by the state and partly by their respective counties. (Judicial Council of California, Historical Analysis of Disparities in Judicial Benefits (Dec. 15, 2009) pp. 5-7.)[1] In 1994, however, the state took over the exclusive responsibility for the payment of these salaries. (*Id*. at p. 7.)

Both before and after 1994, some counties provided superior court judges with supplemental employment benefits, such as life insurance, medical and/or dental insurance, retirement benefits, and, in some instances, cash. (*Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, 635-636 (*Sturgeon I*); Historical Analysis, *supra*, at pp. 8-11.) These local supplemental benefits varied greatly from county to county. One survey found that, as of 2007-2008, some counties provided no local supplemental benefits at all, while others provided local supplemental benefits worth up to $50,000 a year. (*Id.* at pp. 1-2, D-10-D-14.) Counties that did provide local supplemental benefits justified them on the ground that they were necessary to attract and retain high-quality jurists. (E.g., *Sturgeon I*, *supra*, 167 Cal.App.4th at p. 636.)

In 2006, one Harold P. Sturgeon (represented by Judicial Watch, Inc.) filed an action challenging the payment of local supplemental benefits, arguing, among other things, that (1) they constituted an unlawful gift of public funds, (2) they violated statutes

---

[1] Available at <http://www.courts.ca.gov/documents/analysis-judbenefits-1209.pdf>, as of October 27, 2014.)

3

relating to state funding of judicial salaries, and (3) they violated the requirement of the California constitution that the legislature prescribe the compensation of judges (Cal. Const., art. VI, § 19). (*Sturgeon I*, *supra*, 167 Cal.App.4th at pp. 637-657.)

In 2008, an appellate court rejected Sturgeon's first two arguments; however, it did agree that local supplemental benefits violated the state constitutional provision giving the legislature the duty of prescribing judges' compensation. (*Sturgeon I*, *supra*, 167 Cal.App.4th at pp. 637-657.) It stated, "Under our constitutional scheme, judicial compensation is a matter of statewide concern and the Legislature must set policy with respect to all aspects of judicial compensation. . . . [T]he Legislature's obligation to 'prescribe judicial compensation' requires that it set forth standards or safeguards which assure that fundamental policy is implemented. . . . The obligation is not onerous, but does require that the Legislature consider the specific issue and, at a minimum, establish or reference identifiable standards." (*Id*. at p. 657.)

In 2009, in response to *Sturgeon I*, the Legislature passed Senate Bill No. 11 (2009–2010 2d Ex. Sess.) (SBX2 11). SBX2 11 enacted Government Code section 68220, which, as relevant here, provides:

"(a) Judges of a court whose judges received supplemental judicial benefits provided by the county or court, or both, as of July 1, 2008, shall continue to receive supplemental benefits from the county or court then paying the benefits on the same terms and conditions as were in effect on that date.

"(b) A county may terminate its obligation to provide benefits under this section upon providing the Administrative Director of the Courts and the impacted judges with

4

180 days' written notice. The termination shall not be effective as to any judge during his or her current term while that judge continues to serve as a judge in that court or, at the election of the county, when that judge leaves office."

In addition, an uncodified portion of SBX2 11 provides: "Notwithstanding any other law, no governmental entity, or officer or employee of a governmental entity, shall incur any liability or be subject to prosecution or disciplinary action because of benefits provided to a judge under the official action of a governmental entity prior to the effective date of this act on the ground that those benefits were not authorized under law." (SBX2 11, § 5.)

On remand, Sturgeon asserted that SBX2 11 was invalid for three reasons: (1) It was outside the scope of the governor's proclamation calling the special session at which it was enacted, (2) it did not adequately prescribe the benefits to be provided, and (3) it violated equal protection. (*Sturgeon v. County of Los Angeles* (2010) 191 Cal.App.4th 344, 347, 350 (*Sturgeon II*).)

In 2010, an appellate court rejected all three challenges. (*Sturgeon II*, *supra*, 191 Cal.App.4th at pp. 350-355.) The court, however, repeatedly characterized SBX2 11 as only "an interim solution." (*Id*. at p. 352; see also *id*. at pp. 348, 354-355.) It concluded with the following homily: "[O]n its face [SBX2 11] is not a permanent response to either the constitutional issues we identified in *Sturgeon I* or the difficult problem of adopting a compensation scheme that deals with varying economic circumstances in an equitable and efficient manner. Thus, we would be remiss in discharging our duties if we did not state that while the Legislature's interim response to *Sturgeon I* defeats the

5

particular challenges asserted by Sturgeon in this litigation, that interim remedy, if not supplanted by the more comprehensive response [SBX2 11] plainly contemplates, most likely will give rise to further challenges by taxpayers or members of the bench themselves. . . . [T]he issue of judicial compensation is a state, not a county, responsibility. We are confident that the Legislature within a reasonable period of time will act to adopt a uniform statewide system of judicial compensation." (*Id*. at p. 355.)[2]

II

FACTUAL BACKGROUND

Consistent with the applicable standard of review (see part IV, *post*), the following facts are drawn from plaintiffs' complaints.

Commissioner Glenda Veasey presided over the divorce of plaintiff Dennis Ettlin, Judge Elia Weinbach presided over the divorce of plaintiff Daniel Cooper, and Judge Thomas Trent Lewis presided over the divorce of plaintiff Anthony Locatelli. All three of these jurists received local supplemental benefits.

According to plaintiffs, the County of Los Angeles (County) "is a 'real party in interest' in every divorce case as it reaps a financial benefit." The County's Child Support Services Department (CSSD) receives so-called Title IV-D funds from the state and federal governments based on "a percentage of the expenses related to support orders as well as incentives . . . ." Higher child support awards benefit the County because they

---

[2] Plaintiffs claim that *Sturgeon II* "encouraged" taxpayers to challenge SBX2 11. We do not agree that that was its intent, though that may have been its effect. It merely *predicted* that taxpayers would challenge SBX2 11 — a prediction that has now become a self-fulfilling prophecy.

"reduce the likelihood that children and supported spouses will seek indigent aid from the [C]ounty[,] . . . increase the need [for] and likelihood [of] enforcement[, and] . . . increase the CSSD operations budget." Plaintiffs conclude that local supplemental benefits are, in effect, bribes "to influence the judge's decision to create a non-custodial parent and [a] high child support order, thus protecting the [C]ounty's interests."

The relief that plaintiffs seek consists exclusively of money damages.

III

PROCEDURAL BACKGROUND

Ettlin, Cooper, and Locatelli, between them, filed the following 10 actions:

| Plaintiff | Defendant | County | Case No. |
|-----------|-----------|--------|----------|
| Ettlin | Glenda Veasey | Los Angeles | YC064994 |
| Ettlin | John A. Slawson | Los Angeles | YC065018 |
| Ettlin | Sandy R. Kriegler | Los Angeles | YC065019 |
| Ettlin | Kenneth Taylor | Los Angeles | YC065021 |
| Ettlin | Carolyn Kuhl | Los Angeles | YC065164 |
| Cooper | Elia Weinbach | Los Angeles | SC113064 |
| Cooper | Kathryn Doi Todd | Los Angeles | SC113135 |
| Cooper | Judith Ashmann-Gerst | Los Angeles | SC113136 |
| Cooper | Michael Levanas | Los Angeles | SC113137 |
| Locatelli | Thomas Trent Lewis | San Diego | BC472585 |

Each of the defendants is a judge, commissioner, or appellate justice sitting in Los Angeles.

The only complaints that have been included in the appellate record are the complaints in *Ettlin v. Veasey*, *Cooper v. Weinbach*, and *Locatelli v. Lewis*. Those complaints are all essentially identical; they vary only as to details regarding the respective plaintiffs and their interactions with the respective defendants.

7

All of the cases filed by Ettlin and Cooper were assigned to Judge Robert H. O'Brien.  Judge O'Brien then ordered these cases consolidated.

Meanwhile, *Locatelli v. Lewis* was transferred to Los Angeles County and assigned to Judge Frederick C. Shaller.

Each of the defendants filed a separate demurrer.  Once again, however, the only demurrers that are in the record are the demurrers in *Ettlin v. Veasey*, *Cooper v. Weinbach*, and *Locatelli v. Lewis*.  Those three demurrers were all essentially identical.  They raised the following grounds:

1.  Local supplemental benefits were not unconstitutional and not disqualifying.

2.  Absolute judicial immunity.

3.  Failure to file a claim under the Government Claims Act.  (Gov. Code, § 810 et seq.)

4.  Governmental immunity for instituting or prosecuting a judicial or administrative proceeding.  (Gov. Code, § 821.6.)

The trial court sustained the demurrers without leave to amend.  Accordingly, it entered judgments against each of the plaintiffs and in favor of each of the defendants.

Plaintiffs filed timely notices of appeal.  We ordered Ettlin and Cooper's appeal consolidated with Locatelli's appeal.

IV

STANDARD OF REVIEW

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action."  (Code Civ. Proc., § 430.10, subd. (e).)

8

"Our standard of review of an order sustaining a demurrer is well settled. We independently review the ruling on demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. [Citation.] In doing so, we 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]' [Citation.]" (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1378.) "[I]n ruling on a demurrer, the court may consider facts that are properly subject to judicial notice, and a '"'complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective.' [Citation.]" [Citation.]' [Citation.]" (*Arroyo v. Plosay* (2014) 225 Cal.App.4th 279, 296.)

"We will affirm an order sustaining a demurrer on any proper grounds, regardless of the basis for the trial court's decision. [Citation.]" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.)

V

THE ADEQUACY OF THE APPELLATE RECORD

As noted, the appellate record does not include seven of the ten complaints. It also does not include the demurrers to those complaints.

"'It is the duty of an appellant to provide an adequate record to the court establishing error. Failure to provide an adequate record on an issue requires that the issue be resolved against appellant. [Citation.]' [Citation.] This principle stems from the well-established rule of appellate review that a judgment or order is presumed correct and

9

the appellant has the burden of demonstrating prejudicial error. [Citations.] By failing to provide an adequate record, appellant cannot meet his burden to show error and we must resolve any challenge to the order against him. [Citation.]" (*Hotels Nevada v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348.)

Because a demurrer challenges the complaint (see part IV, *ante*), it is literally impossible to review an order sustaining a demurrer unless the complaint is in the record. Admittedly, the three complaints that *are* in the record are remarkably similar to each other. One possible inference would be that the seven missing complaints are essentially similar to the three that we do have. However, that inference is not compelled. Indeed, at a minimum, the complaints against the appellate justices must have been different, as they must have presided over different proceedings involving plaintiffs, and they would not have been receiving local supplemental benefits at that time (though they may have received them in the past).[3]

At bottom, it is appellants' burden to establish the contents of the seven missing complaints. We decline to employ inferences to fill in the record in their favor. We will affirm the judgments in favor of Justices Kriegler, Doi Todd, and Ashmann-Gerst, Judges Kuhl and Levanas, and Commissioners Slawson and Taylor based solely on lack of an adequate record. We will address the demurrers on the merits solely with respect to Judges Weinbach and Lewis and Commissioner Veasey (and we will refer to these three defendants hereafter as "the judges").

---

[3] Also, at least according to the briefs, some of the actions involve traffic cases rather than divorce cases.

We also note, however, that if, in fact, the missing complaints *were* substantially similar to the complaints in the record, we would still affirm all of the judgments, albeit on the grounds discussed in the remainder of this opinion.

VI

THE JUDGES WERE NOT DISQUALIFIED

AND DID NOT VIOLATE DUE PROCESS

The judges demurred, in part, on the ground that they did nothing wrong by receiving local supplemental benefits and by nevertheless presiding over plaintiffs' cases.

As a matter of federal due process, "a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case. [Citation.]" (*Caperton v. A.T. Massey Coal Co., Inc.* (2009) 556 U.S. 868, 876.) Moreover, even when the judge does not have a direct pecuniary interest, "'[e]very procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true . . . denies . . . due process of law.' [Citation.]" (*Id*. at p. 878; see also *id*. at pp. 885-886.)

As a matter of state law, a judge is disqualified if "he or she "has a financial interest in the subject matter in a proceeding or in a party to the proceeding." (Code Civ. Proc., § 170.1, subd. (a)(3)(A).) A judge is also disqualified if:

"(i) The judge believes his or her recusal would further the interests of justice.

"(ii) The judge believes there is a substantial doubt as to his or her capacity to be impartial.

11

"(iii)  A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial."  (Code Civ. Proc., § 170.1, subd. (a)(6)(A).)

We begin with the proposition that judges must be paid.  Thus, the federal government pays federal judges, even though the United States is probably the most frequent party to litigation in federal court (especially when its departments and officers are included).  Likewise, the state government pays state judges, even though it appears frequently in state court litigation.

Plaintiffs, to their credit, acknowledge this argument from necessity.  They argue, however, that this "deeply considered compromise" is permissible only because the federal government and the state government are "sovereign entit[ies]."  They argue that it does not authorize "non-sovereign lower-level organizational entities, such as county government" to compensate judges.  They conclude that "Los Angeles County's actual payments to a judge are no different than payments (hypothetically) by Plaintiff[s]."

Plaintiffs offer no authority for their assertion that sovereignty is what matters; it is merely an ipse dixit.  If, however, sovereignty is the test, counties must be deemed sovereigns for this purpose.  Under the California Constitution, "counties . . . are legal subdivisions of the State."  (Cal. Const., art. XI, § 1, subd. (a); see also Gov. Code, § 23002.)  Thus, "[c]ounties are state agencies which exercise within their boundaries the sovereignty of the state . . . ."  (*Griffin v. County of Colusa* (1941) 44 Cal.App.2d 915, 920.)  They "perform many functions which are state functions . . . ."  (*County of Santa Barbara v. City of Santa Barbara* (1976) 59 Cal.App.3d 364, 371.)  "The principal purpose in establishing counties was to make effectual the political organization and civil

12

administration of the state which require local direction, supervision and control, including, to a large extent, the administration of public justice. [Citation.]" (*Dineen v. City and County of San Francisco* (1940) 38 Cal.App.2d 486, 490.)

"'[T]he state may, through its legislature, and in the exercise of its sovereign power and will, in all cases where the people themselves have not restricted or qualified such exercise of that power, apportion and delegate to the counties any of the functions which belong to it' . . . .' [Citation.]" (*Watson v. Greely* (1924) 67 Cal.App. 328, 337.) Here, by enacting SBX2 11, the state not only authorized but required counties to assist it in carrying out the sovereign function of compensating judges.

In our view, however, what distinguishes the state or federal government's payment of a salary from a private citizen's payment of a bribe is not the fact that the payor is a sovereign. Sovereigns are not necessarily disinterested; they want to win their lawsuits as much as private citizens do. Moreover, it is certainly possible for a sovereign to bribe a judge. For example, if a lawyer employed by the state Department of Transportation agreed to give a judge a Lamborghini if the judge ruled in favor of the state, the involvement of the sovereign would not excuse either the bribe-giver or the bribe-taker.

What matters is not the nature of the offeror but the nature of the offer. A judge's salary is not conditional on whether the judge's rulings favor the state. The state has little ability to use a judge's salary as a vehicle for either reward or retaliation. Under the California Constitution, a judge's salary cannot be reduced during his or her term in office. (Cal. Const., art. III, § 4, subd. (b).) And by statute, all superior court judges

13

(except presiding judges) receive the same salary. (Gov. Code, §§ 68202, 68203, 68203.1.)

Local supplemental benefits look, walk, and quack like a salary, not like a bribe. They consist of perks conventionally provided to employees in both the public and private sectors. They are not conditional on whether a judge's rulings favor the county. Under SBX2 11, they cannot be either increased or reduced during a judge's term in office. Most counties that provide local supplemental benefits at all provide them to every judge in the county; the minority of counties that provide them only to some judges do so based on fixed cutoff dates, depending on when a judge first took office. (Historical Analysis, *supra*, at pp. 16-17, D-10-D-14.) Thus, a county cannot use local supplemental benefits to reward or to retaliate against a judge.

In this case, we may accept as true plaintiffs' allegations that, even though the County was not a party to their divorce proceedings, it had a pecuniary interest in those proceedings. The judges who presided over the divorce proceedings, however, had no such pecuniary interest, because their rulings could not possibly affect their local supplemental benefits. Moreover, the mere fact that the County provided a portion of the judges' compensation would not cause a reasonable person to entertain a doubt that the judges would be able to be impartial. Indeed, under SBX2 11, the state required the County to do so.

*Silva v. County of Los Angeles* (C.D. Cal. 2002) 215 F.Supp.2d 1079 is directly on point. There, the plaintiff filed an action against Los Angeles County in state court. (*Id.* at pp. 1080-1081.) The state court judge granted a directed verdict against the plaintiff

14

and in favor of the County. The plaintiff then filed an action in federal court against the state judge and others (*id*. at p. 1081); he asserted that, by receiving local supplemental benefits and by failing to disclose the receipt of those benefits, the state judge deprived him of his federal constitutional right to due process. (*Id*. at p. 1082.)

The federal court granted a motion to dismiss. (*Silva v. County of Los Angeles*, *supra*, 215 F.Supp.2d at p. 1080.) It ruled, "Even assuming all of the facts in [the] complaint are true, those facts simply do not establish a due process violation." (*Id*. at p. 1086.) It explained, in part, "[T]he County pays local judicial benefits to Superior Court judges regardless of the outcome of any particular case, and thus there is no incentive for a Superior Court judge to rule in the County's favor." (*Id*. at p. 1087; accord, *Fine v. Sheriff of Los Angeles County* (9th Cir. Dec. 16, 2009, No. 09–56073) 2009 U.S. App. LEXIS 27586 [judge who received local supplemental benefits was not disqualified from case to which county was a party]; *Priddel v. Shankie* (1945) 69 Cal.App.2d 319, 327 [judge whose salary was paid by county was not disqualified from case to which county was party].)[4]

---

[4] The judges' main argument as to why they were not disqualified is that *Sturgeon I* and *II* supposedly held that local supplemental benefits are constitutional. Neither of those cases, however, addressed the particular due process argument that plaintiffs are raising here. """It is axiomatic that cases are not authority for propositions not considered."' [Citation.]" (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.) The judges' briefs would have been more helpful if they had cited *Silva*, *Fine*, or *Priddel*.

We conclude that, for the same reason, the trial court correctly sustained the demurrers without leave to amend.[5]

VII

ABSOLUTE JUDICIAL IMMUNITY

The judges also demurred based, in part, on absolute judicial immunity.

"Judicial immunity from a civil action for monetary damages is absolute. [Citations.]" (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 586.) "'The concept of judicial immunity is long-standing . . . , with its roots in English common law. It bars civil actions against judges for acts performed in the exercise of their judicial functions and it applies to all judicial determinations, including those rendered in excess of the judge's jurisdiction, no matter how erroneous or even malicious or corrupt they may be. [Citations.]' [Citation.] 'The rationale behind the doctrine is twofold. First, it "protect[s] the finality of judgments [and] discourag[es] inappropriate collateral attacks." [Citation.] Second, it "protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants. [Citation.]" [Citation.]' [Citation.]" (*McClintock v. West* (2013) 219 Cal.App.4th 540, 550.)

"Under the concept of 'quasi-judicial immunity,' California courts have extended absolute judicial immunity to persons other than judges if those persons act in a judicial

---

[5] Ettlin filed a request that this appeal be heard by justices who have never received local supplemental benefits. The foregoing reasoning compels us to deny his request and to assign the case without regard to whether the justices on the panel have or have not received local supplemental benefits. We also note that, if any of the justices on this panel have received such benefits, that event was so remote in time that no one could reasonably entertain a doubt as to their impartiality.

16

or quasi-judicial capacity. Thus, court commissioners 'acting either as a temporary judge or performing subordinate judicial duties ordered by the appointing court' have been granted quasi-judicial immunity. [Citation.]" (*Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 852-853; see also *Tagliavia v. County of Los Angeles* (1980) 112 Cal.App.3d 759, 763.)

Plaintiffs argue that judicial immunity does not apply because they sued the judges as individuals, rather than in their official capacity.

""'Immunity exists for 'judicial' actions; those relating to a function normally performed by a judge and where the parties understood they were dealing with the judge in his official capacity. [Citations.]" [Citation.] Thus, the line is drawn "between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges. Here, as in other contexts, immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." [Citation.]' [Citation.]" (*Regan v. Price* (2005) 131 Cal.App.4th 1491, 1495-1496.)

Here, plaintiffs are suing the judges because the judges accepted benefits that were prescribed by law (albeit a law that plaintiffs contend is unconstitutional) as compensation for performing their official judicial duties. Even more important, plaintiffs are suing the judges because, they allege, the benefits functioned as bribes to the judges, to influence them in the performance of their official judicial duties. It is hard to imagine a claim that more clearly implicates judicial acts. Plaintiffs cannot plead their way around judicial immunity simply by naming each defendant as "an individual."

17

Plaintiffs also assert that "[b]ench officers must abide by the CCP, the Code of Judicial Ethics and the laws of California and the United States as a precondition for any immunity." Not so. (*Dennis v. Sparks* (1980) 449 U.S. 24, 25-29 [judge who was sued for allegedly taking bribe had judicial immunity].) If this were true, a judge could claim immunity only if he or she could prove that he or she did nothing wrong; but in that case, the judge would not need immunity at all. Rather, as already noted, judicial immunity applies even if the judge's actions were erroneous, in excess of jurisdiction, malicious, or corrupt.

Plaintiffs argue that "[t]aking payments personally from any party other than their employer is outside the scope of all official judicial actions." (Emphasis omitted.) Once again, however, as already noted, a judge accused of taking a bribe can have immunity. In any event, the judges' employer — the State of California — has authorized the payments by enacting SBX2 11.[6]

*Los Angeles County Ass'n of Envtl. Health Specialists v. Lewin* (C.D. Cal. 2002) 215 F.Supp.2d 1071 upheld a claim of judicial immunity on almost identical facts. There, the plaintiff filed an action against the County of Los Angeles in state court. (*Id.* at p. 1072.) The plaintiff prevailed; however, the state court judge denied the plaintiff's motion for attorney fees. (*Id.* at pp. 1072-1073.) The plaintiff then filed an action against the state judge in federal court, alleging that, because the judge received local

---

[6] Actually, Commissioner Veasey's employer is the County. Thus, even under plaintiffs' formulation, for her, receiving local supplemental benefits is an official judicial action.

supplemental benefits from the county, he was disqualified, and that, by presiding over the case without revealing that he was disqualified, he violated due process. (*Id*. at pp. 1073-1074.)

The federal court granted the state judge's motion to dismiss. (*Los Angeles County Ass'n of Envtl. Health Specialists v. Lewin*, *supra*, 215 F.Supp.2d at p. 1074.) It ruled that, even assuming the allegations of the complaint were true, the state judge was entitled to absolute judicial immunity. (*Id*. at pp. 1077-1078.) It explained that the state judge "clearly was performing a judicial function when he denied the [plaintiff]'s request for attorney's fees. [Citation.]" (*Id*. at p. 1077.) Moreover, "[e]ven if [the state judge] violated the [plaintiff]'s constitutional rights by failing to disclose that he received payments from the County, he did not act in the complete absence of jurisdiction." (*Id*. at p. 1078.)[7]

Plaintiffs cite *Caperton v. A.T. Massey Coal Co., Inc.*, *supra*, 556 U.S. 868, which held that it was a violation of due process for an appellate judge to hear an appeal involving a corporation after accepting a $3 million campaign contribution from an officer of the corporation. (*Id*. at p. 872.) Plaintiffs then argue that, if judges have absolute immunity, "[t]he U.S. Supreme Court would not have wasted its precious time

___

[7]     Under Government Code section 6103, a "public officer . . . acting in his or her official capacity" is exempt from paying filing fees. Defendants were granted an exemption from paying filing fees on appeal.

Ettlin has filed a document entitled "Appellant's Objection to Fee Exemption," in which he argues that defendants are not exempt from filing fees because they were sued in their individual capacities, not their official capacities. However, for the same reasons that we concluded above that defendants are entitled to judicial immunity, we also conclude that defendants are entitled to a fee exemption.

on *Caperton . . . .*"  In *Caperton*, however, the judge was not even a party.  The mere fact that bribe-taking and bias on the part of a judge violate due process does not tell us what the remedy for the due process violation is.  And the doctrine of judicial immunity tells us that the remedy is *not* an action for money damages against the judge.

Plaintiffs also draw an analogy to the "kids for cash" scandal, in which two Pennsylvania judges took bribes from private juvenile detention facilities in exchange for sentencing children to those facilities.  Eventually, however, those judges were criminally convicted.  (See generally <http://en.wikipedia.org/wiki/Kids_for_cash_scandal>, as of May 20, 2014.)  Absolute judicial immunity does not shield a judge from criminal liability.  (*Mireles v. Waco* (1991) 502 U.S. 9, 10, fn. 1.)  This demonstrates, once again, that there are remedies for judicial bribe-taking and corruption other than an action for money damages.

We emphasize that we are applying the common-law doctrine of judicial immunity; we are not applying the retroactive immunity provision of SBX2 11.  Plaintiffs argue that this retroactive immunity provision is unconstitutional.[8]  We need not and do not decide this issue.

We conclude that the demurrers were properly sustained based on judicial immunity.

---

[8]      Some of this argument has been cribbed from a *Salon* article, without any citation or other form of credit.  (<http://www.salon.com/2007/10/21/kennedy_amnesty>, as of October 27, 2014.)

VIII

THE GOVERNMENT CLAIMS ACT

Finally, the judges demurred based, in part, on failure to file a claim pursuant to the Government Claims Act and statutory immunity under the Government Claims Act.

Plaintiffs, however, pleaded civil rights claims under 42 United States Code section 1983 (section 1983). The claim presentation requirement of the Government Claim Act does not apply to a section 1983 cause of action. (*Felder v. Casey* (1988) 487 U.S. 131, 138; *Williams v. Horvath* (1976) 16 Cal.3d 834, 842; *Florio v. City of Ontario* (2005) 130 Cal.App.4th 1462, 1468 [Fourth Dist., Div. Two].) Similarly, state statutory immunities cannot bar a section 1983 cause of action. (*Martinez v. California* (1980) 444 U.S. 277, 283-284; *Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 759, fn. 11.) Accordingly, to the extent that the trial court sustained the demurrers without leave to amend on either of these grounds, it erred.

For the reasons already stated, however, the demurrers were properly sustained. Therefore, the error is harmless.

IX

MISCELLANEOUS ISSUES

A.      *Disqualification of Judges O'Brien and Shaller*

Plaintiffs contend that Judge O'Brien and Judge Shaller, who sustained the demurrers, were themselves disqualified.

21

1. *Additional factual and procedural background.*

After their case was assigned to Judge O'Brien, Ettlin and Cooper filed statements that Judge O'Brien was disqualified based on bias. (See Code Civ. Proc., § 170.3, subd. (c).) In support, they asserted that, between 1989 and 1999, Judge O'Brien had received over $270,000 in local supplemental benefits.

Judge O'Brien ordered the statements stricken. (See Code Civ. Proc., § 170.4, subd. (b).) He explained: "The undersigned retired as a Superior Court Judge on August 16, 1999, more than a decade ago. As a retired judge, the undersigned [h]as been assigned to sit as a judge of the Los Angeles Superior court by the California Chief Justice pursuant to [the] California Constitution, Article VI, section 6. As an assigned judge, the undersigned is paid entirely by the state. Government Code section 68543.5(a). The undersigned does not receive compensation or benefits from the County of Los Angeles. [¶] Accordingly, as a matter of law the statement of disqualification demonstrates on its face no legal grounds for disqualification."

Cooper and Ettlin challenged Judge O'Brien's order by filing petitions for writ of mandate. We take judicial notice that the petitions were summarily denied.

As far as the record reflects, Locatelli never asserted below that Judge Shaller was disqualified.

2. *Analysis.*

We cannot reach this contention because it simply is not cognizable on appeal. "The determination of the question of the disqualification of a judge is not an appealable

order and may be reviewed only by a writ of mandate from the appropriate court of appeal . . . ." (Code Civ. Proc., § 170.3, subd. (d).)

With regard to Judge Shaller, we cannot reach this contention for the additional reason that Locatelli never sought to disqualify Judge Shaller below. (Code Civ. Proc., § 170.3, subd. (c); *People v. Farley* (2009) 46 Cal.4th 1053, 1110.)

B.    *Change of Venue*.

Plaintiffs contend that they were entitled to a change of venue (presumably based on inability to get a fair trial; see Code Civ. Proc., § 397, subd. (b)). However, they have forfeited this contention by failing to support it with reasoned argument and citation of authority. (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1539.)

Separately and alternatively, they have also forfeited this contention by failing to provide us with an adequate record. (See part V, *ante*.) Although Cooper did file a motion for change of venue, which is in the record, the record does not contain any opposition to the motion or any ruling on the motion.

C.    *Misprision of Felony*.

Plaintiffs contend that, by failing to report the fact that local supplemental benefits are illegal, the judges are guilty of misprision of felony under 18 United States Code section 4. This statute provides that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States" has committed a federal crime. (Plaintiffs do not identify the federal felony that the judges supposedly concealed.)

23

Plaintiffs did not allege misprision of felony in their complaints. Accordingly, this contention fails to show that the trial court erred in any way in sustaining the demurrers.

If only out of an excess of caution, we note that even if the judges did fail to report a federal felony, we could not do anything about it. A federal criminal charge can be brought only by a federal prosecutor (*Linda R.S. v. Richard D.* (1973) 410 U.S. 614, 619) in a federal court. (18 U.S.C. § 3231.)

D.      *Sex Discrimination*.

Plaintiffs contend that SBX2 11 violates the federal Equal Pay Act of 1963 (29 U.S.C. § 206) because it "allows [the] 58 county Superior Courts to make unequal payments to male and female bench officers."

Again, plaintiffs did not allege sex discrimination in their complaints. Thus, this contention fails to show that the trial court erred in sustaining the demurrers.

In any event, plaintiffs' sex discrimination theory is fatally flawed. Basically, they argue that, because Los Angeles County provides local supplemental benefits and Humboldt County does not, male judges in Los Angeles County are paid more than female judges in Humboldt County. This ignores the fact that *female* judges in Los Angeles County are also paid more than *male* judges in Humboldt County. In other words, to the extent that SBX2 11 has a discriminatory impact, it is discriminatory based on location, not sex. The Equal Pay Act "applies only to pay disparities stemming from sex discrimination. Pay disparities due to other reasons, by contrast, are not actionable." (*Kangethe v. District of Columbia* (D.D.C. 2013) 953 F.Supp.2d 194, 203.)

24

E.      *Involvement of the Commission on Judicial Performance*

        *and the Attorney-General.*

Plaintiffs claim that the Commission on Judicial Performance (Commission) has

determined that SBX2 11 is unconstitutional. According to plaintiffs, the Commission

has asked the Attorney General for an opinion on whether SBX2 11 is constitutional, but

the Attorney General "is delaying and effectively refusing" to respond. Even if true, this

has no bearing on this case. The Commission is not in charge of deciding whether

statutes are or are not constitutional. And, as plaintiffs concede, the Attorney General has

never issued an opinion on the matter.[9]

In any event, plaintiffs have not properly placed the general constitutionality of

SBX2 11 at issue in this action. Even assuming that SBX2 11 and/or local supplemental

benefits are unconstitutional, plaintiffs do not explain how that adversely affected their

divorce cases. Certainly it would not entitle them to the money damages that they are

seeking.

F.      *Disqualification of the Sturgeon I and II Justices.*

Plaintiffs argue that the justices who decided *Sturgeon I* and *Sturgeon II* lacked

"personal jurisdiction" because they had received local supplemental benefits in the past.

Plaintiffs also make a somewhat convoluted claim that then-Chief Justice Ronald M.

---

[9]     Plaintiffs seem to think that the Attorney General has a duty to "certif[y] the constitutionality of SBX2 11 pursuant to United States Supreme Court Rule 14.1(e)(v) and pursuant to 28 U.S.C. [section] 2403(b)." The rule and statute cited, however, merely allow a state attorney general to intervene in a federal case involving the constitutionality of a state statute. They do not *require* a state attorney general to do anything.

25

George exercised undue influence over Justice Patricia Benke shortly before she authored *Sturgeon II*.

Plaintiffs do not explain, however, what any of this has to do with this case. They do not suggest that we should simply disregard *Sturgeon I* and *II*; quite the contrary, they rely on those cases. Moreover, even if we were to disregard *Sturgeon I* and *II*, the result in this case would still be the same.

X

ATTORNEY FEES

Defendants have requested an award of attorney fees on appeal under 42 United States Code section 1988 (section 1988).

As mentioned earlier (see part VIII, *ante*), plaintiffs relied on section 1983. Section 1988, as relevant here, provides that: "In any action or proceeding to enforce . . . section[] . . . 1983 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . ." (§ 1988(b).)

In a section 1983 action, a prevailing plaintiff is entitled to attorney fees under section 1988 as a matter of right, "absent special circumstances which would render such an award unjust. [Citation.]" (*Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 117.) By contrast, "[a] prevailing defendant . . . is entitled to an award of attorney fees under section 1988 only when the plaintiff's action is '"frivolous, unreasonable, or without foundation."' [Citation.]" (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 38-39, fn. 7.)

Here, plaintiffs' claims are about as frivolous, unreasonable, and without foundation as can be. We may assume, without deciding, that plaintiffs' challenges to local supplemental benefits, while meritless, fall short of being frivolous. Even if so, however, under the circumstances of this case, they are indisputably barred by judicial immunity.[10]

Plaintiffs assert that they "read the *Sturgeon II* decision as an invitation by the [a]ppellate [c]ourt for citizens to bring this kind of suit." (Italics added.) *Sturgeon I* and *II*, however, did not involve any issue of judicial immunity. Even assuming *Sturgeon II* could be read as an invitation to bring a claim, it was not an invitation to bring a claim that was defective or procedurally barred.

We therefore conclude that respondents are entitled to an award of attorney fees on appeal, in an amount to be determined by the trial court on remand.

XI

REQUEST FOR JUDICIAL NOTICE

Locatelli has filed a request for judicial notice. In brief summary, he asks us to take judicial notice that, in his divorce case, he sought to disqualify Judge Lewis, and that the Judicial Council assigned a judge of the Orange County Superior Court (who therefore, according to Locatelli, had received local supplemental benefits) to rule on the

---

[10] We also note that, with respect to seven of the ten defendants, the appeal lacked merit due to plaintiffs' failure to provide us with an adequate record. (See part V, *ante*.)

disqualification issue.  Locatelli concludes that the Judicial Council "lack[s] . . . appreciation for the issues involved."

We decline to take the requested judicial notice because the materials that are the subject of the request are irrelevant to any of the issues to be decided in this appeal.  (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2.)

XII

DISPOSITION

The judgments are affirmed.  Defendants are awarded attorney fees on appeal against plaintiffs in an amount to be determined by the trial court on remand.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
J.

We concur:

RAMIREZ _____
P. J.

KING _____
J.

28